671 A.2d 199

THE CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION, PLAINTIFF–RESPONDENT, v. CYNWYD INVESTMENTS, A PENNSYLVANIA PARTNERSHIP, SQUARE BRIGHTON CORPORATION, INC., A NEW JERSEY CORPORATION, AND GREATE BAY HOTEL AND CASINO, INC., T/A SANDS HOTEL & CASINO, A NEW JERSEY CORPORATION, DEFENDANTS–

RESPONDENTS, AND CORE STATES NJ NATIONAL BANK, ATLANTIC CITY ELECTRIC COMPANY, T/A ATLANTIC ELECTRIC, A NEW JERSEY CORPORATION, AND THE STATE OF NEW JERSEY, DEFENDANTS, AND BOARDWALK REGENCY CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT–APPELLANT.

THE CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION, PLAINTIFF–RESPONDENT, v. CYNWYD INVESTMENTS, A PENNSYLVANIA PARTNERSHIP, GREATE BAY HOTEL AND CASINO, INC., T/A SANDS HOTEL & CASINO, A NEW JERSEY CORPORATION, AND BOARDWALK REGENCY CORPORATION, A NEW JERSEY CORPORATION, DEFENDANTS–RESPONDENTS, AND CORE STATES NJ NATIONAL BANK, ATLANTIC CITY ELECTRIC COMPANY, T/A ATLANTIC ELECTRIC, A NEW JERSEY CORPORATION, AND THE STATE OF NEW JERSEY, DEFENDANTS, AND SQUARE BRIGHTON CORPORATION, INC., A NEW JERSEY CORPORATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 23, 1996—Decided February 22, 1996.

444

Before Judges MICHELS, VILLANUEVA, and KIMMELMAN.

*Lloyd D. Levenson* argued the cause for appellant Boardwalk Regency Corporation in A–3709–94T3 (*Cooper Perskie April Niedelman Wagenheim & Levenson,* attorneys; *Mr. Levenson,* on the brief).

*Edward N. FitzPatrick* argued the cause for appellant Square Brighton Corporation, Inc. in A–3782–94T3 (*DeCotiis, FitzPatrick & Gluck,* attorneys; *Mr. FitzPatrick* and *Patrick T. McGahn, Jr.,* of counsel; *Agnes I. Rymer,* on the brief).

*Daniel A. Corey,* City Solicitor, argued the cause for respondent City of Atlantic City in both appeals (*Mr. Corey* and *John M. Eccles, Jr.,* on the briefs).

*John H. Rosenberger* argued the cause for respondent Cynwyd Investments in both appeals (*Perillo and Rosenberger,* attorneys; *Mr. Rosenberger,* on the brief).

*Stephen R. Nehmad* argued the cause for respondent Greate Bay Hotel and Casino, Inc. in both appeals (*Perskie & Nehmad,*

attorneys; *Mr. Nehmad*, of counsel; *Richard F. DeLucry*, on the briefs).

The opinion of the court was delivered by

KIMMELMAN, J.A.D. (temporarily assigned).

In separate appeals which have been consolidated for the purpose of argument and decision, defendant Square Brighton Corporation, Inc. (Square Brighton) and defendant Boardwalk Regency Corporation (BRC) appeal from an order entered March 17, 1995, upholding the condemnation complaint filed by plaintiff City of Atlantic City (City) and sanctioning the City's right to exercise its power of eminent domain to acquire the 16' strip of land in question. Square Brighton and BRC both contend that the City's condemnation complaint failed to comply with the Eminent Domain Act of 1971, *N.J.S.A.* 20:3–1 to –50, specifically with the provisions of *N.J.S.A.* 20:3–6, and, therefore, should have been dismissed.

Similarly, it is urged that the City failed to comply with the provisions of *R.* 4:73–1, which is the functional equivalent of *N.J.S.A.* 20:3–6. Assignment Judge Richard J. Williams, in a thorough and well-documented oral opinion, refused to dismiss the City's condemnation complaint and upheld the right of the City to exercise the power of eminent domain in this case. We affirm.

By way of factual background, the property condemned is a 16' strip located at the northerly (farthest from the boardwalk) end of property leased by BRC (a subsidiary company of the Caesar's Casino) from the fee owner Cynwyd Investments (Cynwyd), a principal defendant in this litigation. The 16' strip amounts to approximately two percent of the entire leased property. The leased property was formerly the site of the Traymore Hotel and is adjacent to the boardwalk between Illinois Avenue and Indiana Avenue. BRC, in turn, subleases the property to Square Brighton which operates the property as a parking lot. The 16' strip was intended to be dedicated to the City for use as a part of a public thoroughfare now known as Pop Lloyd Boulevard when the Cae-

sar's casino interests intended to build on the Traymore site some years ago. No building took place on the Traymore site. The 16' strip was not dedicated to the use of the City but instead was sublet as part of the entire Traymore site to Square Brighton. However, the 16' strip nevertheless did become a portion of Pop Lloyd Boulevard and has been so used for perhaps ten or more years. Defendant Greate Bay Hotel and Casino, Inc. (Sands) has been paying an annual rental to Square Brighton for use of the 16' strip even though, as indicated, it forms a portion of a public thoroughfare.

In 1991, Sands instituted an action in lieu of prerogative writs against the City to compel the condemnation of the 16' strip. BRC and Square Brighton intervened as defendants in that litigation and later became defendants. The case came on for trial during the summer of 1994. Before decision, Sands and the City entered into a settlement whereby the City agreed to condemn the 16' strip and Sands agreed to pay for the entire cost of the acquisition and the expenses of the condemnation litigation. Shortly thereafter, the Council of the City of Atlantic City adopted Ordinance 61 which approved and incorporated the provisions of the settlement and directed the City to acquire the 16' strip. Square Brighton filed an action in lieu of prerogative writs challenging the validity of Ordinance 61. Its validity was upheld by the Law Division, and that decision was appealed and argued before this panel on the same day as the within consolidated appeal.[1]

Following the adoption of Ordinance 61, the City engaged in negotiations with Cynwyd, the record owner of the fee simple title, to acquire the 16' strip. The parties agreed upon an acquisition price of $625,000. While not determinative of the within appeal, it is interesting to note that in 1994, the Atlantic County Board of

---

[1] Today we are filing a separate opinion in *Square Brighton Corporation, Inc. v. The City of Atlantic City,* 287 *N.J.Super.* 450, 671 *A.2d* 203, upholding the validity of Atlantic City Ordinance 61.

Taxation rendered a judgment which values the 16' strip at approximately $532,000. During the tax appeal process, BRC valued the property at substantially less. The agreed upon acquisition price is approximately $100,000 in excess of the valuation fixed for tax assessment purposes.

■  Having set forth the foregoing factual background, we address the nub of the controversy, which is whether the condemnation complaint was facially defective for failure to comply with the letter of *N.J.S.A.* 20:3-6. The statute provides:

Whenever any condemnor shall have determined to acquire property pursuant to law, including public property already devoted to public purpose, but cannot acquire title thereto or possession thereof by agreement with a prospective condemnee, whether by reason of disagreement concerning the compensation to be paid or for any other cause, the condemnation of such property and the compensation to be paid therefor, and to whom payable, and all matters incidental thereto and arising therefrom shall be governed, ascertained and paid by and in the manner provided by this act; provided, however, that no action to condemn shall be instituted unless the condemnor is unable to acquire such title or possession through bona fide negotiations with the prospective condemnee, which negotiations shall include an offer in writing by the condemnor to the prospective condemnee holding the title of record to the property being condemned, setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules. Prior to such offer the taking agency shall appraise said property and the owner shall be given an opportunity to accompany the appraiser during inspection of the property.... *When the holder of the title is unknown, resides out of the State, or for other good cause, the court may dispense with the necessity of such negotiations....*

[*N.J.S.A.* 20:3-6 (emphasis added).]

According to the plain wording of the quoted section, where there is a disagreement with the prospective condemnee holding the title of record to the property being condemned concerning the compensation to be paid or for any other cause, there must be bona fide negotiations with the prospective condemnee which shall include an offer in writing describing the property to be acquired and the compensation offered. Prior to such offer, the taking agency shall appraise the property. But, it is specifically provided that for good cause, the court may dispense with the necessity of such negotiations. We are satisfied that good cause was amply

shown before Judge Williams. In the condemnation complaint, it is alleged that negotiations have taken place with Cynwyd, the "condemnee holding title of record," and that Cynwyd has agreed to accept $625,000 as compensation. Cynwyd has acknowledged the negotiations and agreement as to price both before the trial court and to this court.

Thus, the negotiations and offer required by *N.J.S.A.* 20:3–6 for the benefit of the prospective condemnee are unnecessary as having already taken place. Cynwyd waives compliance with the letter of the statute as a needless technicality. *Tp. of Millburn v. Pitt,* 68 *N.J.* 424, 427, 346 *A.*2d 601 (1975), specifically holds that where the condemnee has waived all statutory procedural matters, as here, the condemning authority need not comply with the pre-condemnation procedural safeguards embodied in *N.J.S.A.* 20:3–6.

The legislative history leading to the enactment of the Eminent Domain Act of 1971 and the pertinent portions of the report of the Eminent Domain Revision Commission have been set forth by this court in *Borough of Rockaway v. Donofrio,* 186 *N.J.Super.* 344, 350–51, 452 *A.*2d 694 (App.Div.1982). There, we viewed that the purpose of *N.J.S.A.* 20:3–6 was to enable entities with condemnation powers to make acquisitions without litigation by affording the proposed condemnee in advance of the institution of proceedings the safeguards built into the statute. *Id.* at 353, 452 *A.*2d 694. When those safeguards have been afforded to the prospective condemnee and there is no impasse between the parties, the procedural safeguards built into *N.J.S.A.* 20:3–6 have been met by agreement of the parties and need not be recounted in the condemnation complaint. *Cf. Tp. of Millburn, supra,* 68 *N.J.* at 427, 346 *A.*2d 601. Strict compliance with the statute and with *R.* 4:73–1 may be waived where the prospective condemnee has not been prejudiced. *See Monmouth County v. Whispering Woods at Bamm Hollow, Inc.,* 222 *N.J.Super.* 1, 7, 535 *A.*2d 968 (App.Div.1987), *certif. denied,* 110 *N.J.* 175, 540 *A.*2d 173 (1988).

In this case, the condemnation complaint was filed not because of any disagreement with Cynwyd but rather because of other

interests affecting title, all as set forth in paragraph 5 of the complaint which makes reference to the lessee BRC, the subtenant Square Brighton, the mortgagee, and easement holders.

In short, this court will not engage in a strained and over-technical construction of *N.J.S.A.* 20:3–6 to upset what appears to be a proper and bona fide condemnation, notwithstanding a charge by appellants' counsel that the condemnation is ostensibly favorable to the Sands casino interests. The legislative intent supportive of the statute has been met and fulfilled by the negotiations that have taken place between the City and Cynwyd. The common sense of this case in view of the factual circumstances requires a practical rather than unnecessarily strict adherence to what ordinarily would be the technical requirements of *N.J.S.A.* 20:3–6. *See Suter v. San Angelo Foundry & Mach. Co.,* 81 *N.J.* 150, 160, 406 *A.*2d 140 (1979); *Jersey City Chapter of Property Owner's Protective Ass'n v. City Council,* 55 *N.J.* 86, 100, 259 *A.*2d 698 (1969)

Should the trial court determine that BRC or Square Brighton or both have a right to share in the condemnation award, the Eminent Domain Act of 1971 and rules of court provide the procedure to be followed in such event.

We affirm the order of March 17, 1995, substantially for the reasons set forth by Assignment Judge Williams in his oral opinion of February 21, 1995, as herein supplemented.